**Electronically Filed
Intermediate Court of Appeals
30218
27-APR-2011
08:06 AM**

NO. 30218

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
STEPHEN R.K. RAMOS, Defendant-Appellant.


APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2P109-00972)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Ginoza, JJ.)


        Defendant-Appellant Stephen R.K. Ramos (Ramos) was
charged by complaint with disorderly conduct as a petty
misdemeanor (Count 1); third degree assault (Count 2); and
prohibitions involving minors for consuming liquor while being
under twenty-one years of age (Count 3).  After a bench trial,
the District Court of the Second Circuit (District Court)[1] found
Ramos guilty as charged on Counts 1 and 2 and acquitted him of
Count 3.  The District Court sentenced Ramos to concurrent terms
of six months of probation on the disorderly conduct count and
one year of probation on the third degree assault count.  The
terms of probation were each subject to the condition that Ramos
serve thirty days in jail, of which twenty-five days were
suspended for one year.  Ramos was also sentenced to fines
totaling $600 and additional fees and assessments.

---

[1] The Honorable Kelsey T. Kawano presided.

Ramos appeals from the Judgment filed on October 30, 2009, in the District Court.[2/] On appeal, Ramos contends that the District Court erred: (1) in convicting him of disorderly conduct as a petty misdemeanor, because Plaintiff-Appellee State of Hawai'i (State) failed to present sufficient evidence "that Ramos was given a reasonable warning or request to desist, but nonetheless persisted in disorderly conduct"; and (2) in convicting him of third degree assault, because the State failed to present any evidence that the person named in the complaint was the person that Ramos assaulted and failed to present sufficient evidence that Ramos caused bodily injury to the alleged victim.

For the reasons set forth below, we conclude that there was insufficient evidence to convict Ramos of disorderly conduct as a petty misdemeanor but sufficient evidence to find that he committed the lesser included offense of disorderly conduct as a violation. We therefore vacate Ramos's disorderly conduct conviction and remand the case with instructions that the District Court enter a judgment that Ramos committed disorderly conduct as a violation. We conclude that there was sufficient evidence to support Ramos's third degree assault conviction and therefore affirm that conviction.

---

[2/] The District Court's Judgment appears to include two pages, the first page of which reflects the sentence on the disorderly conduct count and the second page of which reflects the sentence on the third degree assault count. We note that Ramos's notice of appeal refers only to the disorderly conduct count in the caption and only attaches the first page of the Judgment as an exhibit. The body of the notice of appeal, however, states that Ramos is appealing from the Judgment "entered on October 30, 2009." As his opening brief makes clear, Ramos seeks to challenge both his disorderly conduct and his third degree assault convictions on appeal. Because the body of the notice of appeal did not limit Ramos's appeal to the disorderly conduct count and because Plaintiff-Appellee State of Hawai'i has not disputed Ramos's entitlement to challenge his third degree assault conviction or alleged any prejudice from any deficiency in Ramos's notice of appeal, we construe Ramos's notice of appeal as encompassing the Judgment with respect to both convictions. See Hawai'i Rules of Appellate Procedure Rule 3(c)(2) (2006) ("An appeal shall not be dismissed for informality of form or title of the notice of appeal."). More careful attention in preparing the notice of appeal would have obviated our need to address this issue.

I.  BACKGROUND

The State's main witness at trial was Jeanne Carol (Carol),[3] who was a contract security guard at the Ka'ahumanu Shopping Center.  Carol was on duty on April 10, 2009, at about 7:15 p.m., when she observed Ramos, at a bus stop by the shopping center, punching someone who was sitting down on a bench.  There was a full crowd of people at the bus stop at that time.  Carol testified that Ramos was standing in front of "the guy that was sitting down and just waling on [the guy], right-left, right-left, and the guy's head was like (inaudible)."[4]  Ramos assumed a wide stance while throwing punches, which Carol described as "right-left, right-left . . . . boom, boom."  The guy sitting down did not fight back.  Carol estimated that Ramos threw about six or seven punches before the guy got up.

According to Carol, the bus stop was full, there were maybe twenty to thirty people in the immediate vicinity, and Ramos's conduct caused people nearby to scatter.  "[E]verybody was screaming and yelling."  Carol recalled that a man with a baby had to quickly move the baby carriage out of the way.  Carol and three other security officers intervened and separated Ramos from "the victim."  The victim told Carol that he would be "cool" and went back and sat on the bench.  Carol observed injuries on the victim.  The victim's mouth was cut, there was blood on his mouth, and his eye was "a little bit red."

The three other security officers restrained Ramos who kept attempting to grab or claw at the victim.  Eventually, the security officers placed Ramos on the ground and handcuffed him.  Ramos was swearing and yelling and making verbal threats to the security officers and people in the area, including threats that he would come back and break the security officers' jaws.  The

_____

[3] Although the State spells the witness's last name as "Carroll" in its brief, we will use the spelling set forth in the trial transcript.

[4] Carol did not identify the person whom Ramos was punching by name but referred to this person as "the guy" or "the victim."

3

security officers moved Ramos to a stairwell about 30 feet away. While detained in the stairwell, Ramos vacillated between being nice and angry. He continued making threats and acting in a bizarre manner, and Carol believed Ramos "was under the influence of something." The only people in the area where Ramos was detained were security officers; no members of the public were present.

Toward the end of Carol's direct testimony, the following exchange took place between the prosecutor and Carol:

> [Prosecutor]:      Did you at any time ask the defendant to stop his threatening and yelling and fighting behavior.
>
> [Carol]:      Yes.
>
> [Prosecutor]:  And how did you do that?
>
> [Carol]:      You know --
>
> [Prosecutor]:      And how many times?
>
> [Carol]:      I told him, "Oh, you know, just relax. Just relax." and he would, and then he would get mad again.

Carol did not explain when during the sequence of events she told Ramos to "just relax."

Carol called the Maui Police Department (MPD), and MPD officers arrived a short time later. MPD Officer Leighann Galario-Guzman (Officer Galario-Guzman) testified that Ramos was already in the stairwell when Officer Galario-Guzman arrived. Ramos was yelling and screaming at the security officers, calling them names, and later also swore at the police officers. Officer Galario-Guzman testified that Ramos appeared to be intoxicated. Officer Galario-Guzman arrested Ramos for disorderly conduct and transported Ramos to the police station.

## II.  STANDARD OF REVIEW

We apply the following standard of review in evaluating the sufficiency of the evidence:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but

whether there was substantial evidence to support the conclusion of the trier of fact. . . .

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992) (citations omitted).

## III. DISCUSSION

### A.

#### 1.

The offense of disorderly conduct can be charged as a petty misdemeanor or a violation. Hawaii Revised Statutes (HRS) § 711-1101 (1993 & Supp. 2010) provides in relevant part as follows:

(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

    (a)    Engages in fighting or threatening, or in violent or tumultuous behavior; or

    (b)    Makes unreasonable noise; or

    (c)    Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response; . . .
. . .

(2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

. . . .

(3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

(Emphases added).

Count 1 of the complaint charged Ramos with disorderly conduct as a petty misdemeanor based on the prong of HRS § 711-1101(3) which requires proof that the "defendant persists in disorderly conduct after reasonable warning or request to desist." Count 1 charged Ramos as follows:

> That on or about the 10th day of April, 2009, in the Division of Wailuku, County of Maui, State of Hawai'i, STEPHEN R.K. RAMOS, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, did persist in disorderly conduct, to wit, engage in fighting or threatening, or in a violent or tumultuous behavior, and/or make unreasonable noise, and/or subject another person to offensively coarse behavior or abusive language, which was likely to provoke a violent response, after reasonable warning or request to desist, thereby committing the offense of Disorderly Conduct in violation of Section 711-1101(1)(a)(b)(c) of the Hawaii Revised Statutes.

(Emphases added.)

2.

Ramos argues that his conviction for disorderly conduct as a petty misdemeanor cannot stand because the State failed to present sufficient evidence that he persisted in disorderly conduct after reasonable warning or request to desist. We agree.[5]

In State v. Leung, 79 Hawai'i 538, 543, 904 P.2d 552, 557 (App. 1995), this court concluded that police officers "cannot be considered 'members of the public' for the purpose of establishing Defendant's culpability under the disorderly conduct statute. Arguments with the police, without more, do not fall within the ambit of the disorderly conduct statute[.]" In

---

[5] We note that Ramos's Opening Brief at page 11 cites an unpublished decision issued by the Hawai'i Supreme Court in 2004. The citation to this 2004 decision violates Hawai'i Rules of Appellate Procedure (HRAP) Rule 35(c)(1) (2008) because: the cited case was decided prior to July 1, 2008; it does not establish the law of this case; it does not have res judicata or collateral estoppel effect in this case; and it does not involve "the same respondent." HRAP Rule 35(c)(1). The case should not have been cited, and this court did not consider the improperly cited case in deciding this appeal. Ramos's counsel is cautioned that future violations of HRAP Rule 35(c)(1) may result in sanctions.

support of this conclusion, this court quoted the commentary to HRS § 711-1101, which provides in relevant part:

> A person may not be arrested for disorderly conduct as a result of activity which annoys only the police, for example.  Police officers are trained and employed to bear the burden of hazardous situations, and it is not infrequent that private citizens have arguments with them.  Short of conduct which causes "physical inconvenience or alarm to a member or members of the public" arguments with the police are merely hazards of the trade, which do not warrant criminal penalties.

Leung, 79 Hawai'i at 543, 904 P.2d at 557 (emphases in original omitted) (quoting commentary to HRS § 711-1101 (1993) (footnote omitted)).

The security officers in Ramos's case were performing duties that were functionally analogous to certain duties performed by police officers.  We conclude that neither the security officers nor the police officers who later arrived at the scene can be considered members of the public for purposes of determining Ramos's culpability under the disorderly conduct statute.  See id.

The State relies on Carol's testimony that she told Ramos to "'just relax[,] [j]ust relax' and he would, and then he would get mad again" as the evidence which established that Ramos persisted in disorderly conduct after reasonable warning or request to desist.  Assuming, arguendo, that Carol's statement to Ramos to "just relax" constituted a reasonable warning or request to desist, there was insufficient evidence that Ramos persisted in disorderly conduct after being told to "just relax."  The State did not establish when in the sequence of events Carol told Ramos to "just relax."  Thus, Carol may have told Ramos to "just relax" after Ramos had already been removed to the stairwell away from the public in handcuffs.  When Ramos was in the stairwell, however, he was only in the presence of security officers and police officers.  Because it is unclear when Carol told Ramos to "just relax," the State failed to present substantial evidence that after Carol told Ramos to "just relax" (which may have

7

occurred while Ramos was in the stairwell), Ramos engaged in the charged acts of disorderly conduct "with intent to cause physical inconvenience or alarm by *a member or members of the public*," or recklessly created the risk thereof. Accordingly, the State failed to produce sufficient evidence that Ramos persisted in disorderly conduct after reasonable warning or request to desist. We therefore vacate Ramos's conviction for disorderly conduct as a petty misdemeanor.

3.

There was sufficient evidence that Ramos committed the offense of disorderly conduct as a violation based on Ramos's conduct that occurred before he was removed to the stairwell. This included evidence that the bus stop was crowded and that in response to Ramos's conduct in punching the victim, people scattered and were yelling and screaming. Ramos concedes that there was sufficient evidence to show that he committed disorderly conduct as a violation within the meaning of HRS § 711-1101(1)(a), (b), and (c). Accordingly, we remand the case with instructions that the District Court enter a judgment for the lesser included offense of disorderly conduct as a violation on Count 1.

B.

1.

In Count 2, Ramos was charged with third degree assault, in violation of HRS § 707-712(1)(a) (1993). HRS § 707-712(1)(a) states: "A person commits the offense of assault in the third degree if the person: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]"

Count 2 charged Ramos as follows:

> That on or about the 10th day of April, 2009, in the Division of Wailuku, County of Maui, State of Hawaii, STEPHEN R.K. RAMOS did intentionally, knowingly, or recklessly cause bodily injury to Holden Bingham, thereby committing the offense of Assault in the Third Degree in violation of Section 707-712(1)(a) of the Hawaii Revised Statutes.

8

2.

Ramos contends that the District Court erred in convicting him of the third degree assault count because there was insufficient evidence to support the conviction. Ramos argues that the evidence was insufficient because the State failed to prove that the alleged victim named in the complaint, Holden Bingham, was the person that Ramos assaulted. Ramos asserts: "The State did present evidence that Ramos assaulted a male sitting at a busstop. However, the State presented NO evidence that the male was the same male specified in the Complaint (i.e., Holden Bingham)." (Record citations omitted.) Ramos also argues that there was insufficient evidence that Ramos caused bodily injury to the victim because, notwithstanding the injuries to the victim observed by Carol, there was no testimony regarding the victim's appearance before the incident.

Although the State concedes error on both of Ramos's arguments,

> it is incumbent on the appellate court first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial. In other words, a confession of error by the prosecution is not binding upon an appellate court, nor may a conviction be reversed on the strength of the prosecutor's official action alone.

State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (citations, internal quotation marks, ellipsis points, and brackets omitted). We disagree with Ramos's arguments and conclude that the State's concession of error is not supported by the record or well-founded in law. Accordingly, we affirm Ramos's third degree assault conviction.

3.

The State alleged in the complaint that Ramos assaulted "Holden Bingham," but at trial, it failed to present evidence of the identity of the person Ramos assaulted. Instead, Carol referred to the person whom Ramos was observed punching as

9

"the guy" or "the victim." Ramos acknowledges that this discrepancy between the matters proved at trial and the allegations in the complaint "can be viewed as a 'variance' problem." We conclude that this claimed error should be analyzed under variance principles. The Hawai'i Supreme Court, on numerous occasions, "has recognized that a conviction will not be set aside due to a variance between the evidence proved and the allegations in the indictment or information unless the variance is material." State v. Sanchez, 9 Haw. App. 315, 320, 837 P.2d 1313, 1317 (1992). "To be fatal, a variance must be both material to an essential element of the offense and prejudicial to a substantial right of the accused. State v. Sword, 68 Haw. 343, 345-46, 713 P.2d 432, 434 (1986) (citations omitted).

In State v. Nases, 65 Haw. 217, 649 P.2d 1138 (1982), the Hawai'i Supreme Court addressed circumstances similar to those presented in Ramos's case. Nases was convicted of theft of a calculator. Id. at 218, 649 P.2d at 1139. Nases sought to overturn his conviction on appeal, claiming that there was a fatal variance between the charge and the proof, because "in the charge, the calculator was alleged to be the property of Setsuko Yokoyama and Setsuko Yokoyama doing business as Kalakaua Kleaners, whereas it was actually the property of Kalakaua Kleaners, a corporation." Id.

The supreme court rejected Nases's claim, reasoning that because proof of the particular ownership of the property in question was not an essential element of the crime, there was no fatal variance between the charge and the proof. Id. at 218, 649 P.2d 1139-40. The court stated:

> It has long been settled that where the offense is obtaining control over the property of another, proof that the property was the property of another is all that is necessary and the naming of the person owning the property in the indictment is surplusage. It is undisputed that the calculator did not belong to [Nases] but was the property of another. The particular ownership of the property in question was not an essential element in proving the crime and there is no fatal variance between the charge and the proof.

Id. (citations omitted).[6]

Here, as in Nases, the particular name or identity of the victim is not an essential element of the assault charge. Third degree assault requires proof that the defendant assaulted "another person"; it does not require proof of that person's name. See HRS § 707-712(1)(a). In this case, the evidence at trial proved that Ramos repeatedly punched another person ("the guy" or "the victim") who was sitting on a bench. We conclude that the failure to identify the person that Ramos punched as "Holden Bingham" did not amount to a material or fatal variance that requires Ramos's assault conviction to be overturned.[7]

Ramos does not contend that the identification of the alleged assault victim in the complaint by name deprived him of adequate notice or affected his ability to prepare for trial. We reject Ramos's argument that the failure to present evidence of the victim's identity exposes him to a second prosecution for the same offense. Ramos was convicted of Count 2, which charged him with assaulting Holden Bingham on or about April 10, 2009. Ramos's conviction precludes the State from bringing another prosecution accusing Ramos of assaulting Holden Bingham based on the same incident.

4.

We reject Ramos's claim that there was insufficient evidence that Ramos caused bodily injury to the victim. The term "bodily injury" is defined to include "physical pain." HRS § 707-700 (1993). Ramos cites no authority for the proposition that evidence of the victim's appearance before the assault was

---

[6] To similar effect is State v. Pokini, 45 Haw. 295, 300-06, 367 P.2d 499, 503-05 (1961) (concluding that in a robbery prosecution, there was no fatal variance where the indictment charged that the alleged victim was the owner of the property, but the evidence at trial showed that the property taken from the victim was itself stolen property).

[7] Our conclusion is supported by decisions from other jurisdictions that have held that the name of the victim is not an essential element of the crime of assault. E.g., State v. Plano, 838 P.2d 1145, 1147-49 (Wash. Ct. App. 1992); United States v. Morlan, 756 F.2d 1442, 1445-46 (9th Cir. 1985).

necessary to establish that Ramos caused bodily injury to the victim.

The evidence at trial showed that Ramos stood in front of the victim in a wide stance "just waling" on the victim. Ramos threw six or seven punches while the victim was seated on a bench and did not fight back. After security officers intervened, Carol observed that the victim was cut and bleeding from the mouth and that the victim's eye was red. When viewed in the light most favorable to the State, it was reasonable for the trier of fact to infer that Ramos's punches had caused the injuries observed to the victim's face and that Ramos's multiple punches (his "waling" on the victim) caused the victim physical pain. We conclude that there was sufficient evidence that Ramos intentionally, knowingly, or recklessly caused bodily injury to the victim.

## IV. CONCLUSION

We vacate the October 30, 2009, Judgment of the District Court with respect to Ramos's conviction and sentence for disorderly conduct as a petty misdemeanor, and we remand the case with instructions that the District Court enter a judgment that Ramos committed disorderly conduct as a violation. We affirm the District Court's Judgment with respect to Ramos's conviction and sentence for third degree assault.

DATED: Honolulu, Hawai'i, April, 27, 2011.

On the briefs:

Phyllis J. Hironaka
Deputy Public Defender
for Defendant-Appellant

Renee Ishikawa Delizo
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

12